IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,     :

        Plaintiff,

                             :     Case No. 3:19-cr-75

     v.

MARCO VILLA,                :     JUDGE WALTER H. RICE

        Defendant.        :

---

DECISION AND ENTRY OVERRULING DEFENDANT'S
MOTION TO SUPPRESS (DOC. #29)

---

Defendant Marco Villa was charged in a Superseding Indictment with several counts of drug trafficking, being a felon in possession of a firearm, being an illegal alien in possession of a firearm, and illegal reentry of a previously removed alien. Doc. #39. This matter is currently before the Court on Defendant's Motion to Suppress, Doc. #29. He seeks to suppress all evidence seized from his person and from the vehicle in which he was a passenger during a traffic stop that occurred on April 10, 2019. He also seeks to suppress all statements he made to law enforcement officers on that date.

The Court held an evidentiary hearing on September 7, 2019. Doc. #32. The parties then submitted additional briefs. Docs. ##36, 37.

# I.    Factual Background

Homeland Security Agent Timothy Wallace received information from a reliable confidential informant that Defendant Marco Villa had a large quantity of fentanyl at his residence.  Marco was willing to sell it to the confidential informant. Wallace set up a controlled buy, which was to take place on April 10, 2019, at the Miami Valley Casino.  That afternoon, officers set up surveillance of Villa's residence.  They observed a blue Honda Civic pull up to the house.  A Hispanic male, now known to be Villa, exited the house, put something in the trunk and climbed into the passenger seat.  The vehicle then traveled to a gas station where Villa had a brief conversation with two individuals in a white Mitsubishi.  The two vehicles left the gas station together. Wallace testified that, based on his experience, he believed that the individuals in the white Mitsubishi were to act as security for the drug transaction.  Villa called the confidential informant from the gas station to let him know that they were approximately nine minutes away from the casino.  Doc. #32, PageID##115-22.  The confidential informant relayed this information to Special Agent Kathleen Boyce.  *Id.* at PageID##131-32.  At this point, Wallace believed that there was probable cause to stop the vehicle.

Ohio State Patrol Officer Jason Barhorst, who is also task force officer with Homeland Security, was aware of the controlled buy that was to take place.  His job was to initiate a traffic stop of the Honda Civic.  He waited at a rest area on I-75 until he observed the two vehicles pass by.  As he caught up to the vehicles, he observed the drivers of both cars change lanes to exit the interstate without

using their turn signals. He then activated his lights and initiated the traffic stop. *Id.* at PageID##134-36, 140. The driver of the Mitsubishi pulled to the shoulder. Barhorst went around that car to catch up to the Civic. The driver of the Civic did not immediately stop, but rather made two right turns before pulling into a business. *Id.* at PageID##139-40.

As Barhorst approached the vehicle, he smelled a light odor of marijuana coming from inside. The driver, John Groom, showed Barhorst his identification. Groom was trembling and was extremely nervous. He told Barhorst that he and his friend, "Michael," were going to the casino. Barhorst placed Groom in the patrol car and returned to the vehicle to speak to the passenger, who also appeared nervous. Barhorst again smelled marijuana in the interior of the car. The passenger indicated that his name was Marco Villa and that Groom was an Uber driver. Notably, this was inconsistent with what Groom had said. Villa had no identification with him. *Id.* at PageID##141-46, 161.

Barhorst returned to the patrol car and read Groom his *Miranda* rights. Groom admitted that he sometimes smoked marijuana. Prior to searching the vehicle, Barhorst called for backup, ran a license check and asked dispatch to run criminal history checks on both occupants. He then returned to the Civic, read Villa his *Miranda* rights, handcuffed him and patted him down before securing him in the patrol car. Villa had a large pocket knife and a large wad of cash. Barhorst testified that, at that point, he had probable cause to believe that both occupants were engaged in drug trafficking activity. *Id.* at PageID##147-150.

3

After his backup arrived, Barhorst recovered a small plastic baggie, of the size often associated with narcotic sales, from the interior of the car. Groom admitted that the bag had contained marijuana. Barhorst testified that, based on the odor of marijuana and Groom's admission, he believed that he had probable cause to search the entire vehicle. *Id.* at PageID##150-52. He also observed stems of marijuana on the floor of the car and in the center console. In the trunk, he found a cardboard box containing a plastic grocery bag with compressed narcotics. When Barhorst asked Villa about the box, he denied any knowledge of it. *Id.* at PageID##153-56.

Bureau of Criminal Investigations Agent Richard Miller then arrived at the scene. Miller was dressed in plain clothes and did not have his firearm displayed. He verified with Barhorst that Villa had been *Mirandized* and then questioned Villa. Villa admitted to Miller that the drugs in the trunk were his and that Groom had nothing to do with it. Villa, however, denied Miller's request for consent to search his residence. *Id.* at PageID##171-73.

Villa was indicted the following week and later filed a Motion to Suppress, Doc. #29. After the Court held an evidentiary hearing and the parties submitted additional briefs, Docs. ##36, 37, the United States filed a Superseding Indictment, Doc. #39. In January of 2020, the United States asked the Court to reserve ruling on the Motion to Suppress, so that the parties could continue plea negotiations. Doc. #41. On March 6, 2020, the parties requested that the Court issue a ruling and set the matter for trial.

4

## II.    Analysis

Defendant argues that, because his seizure and the subsequent vehicle search were unreasonable and violated his Fourth Amendment rights, the Court must suppress all evidence found in the vehicle and on his person.  He further argues that all statements he made during the course of the traffic stop must be suppressed both as "fruit of the poisonous tree," *Wong Sun v. United States*, 371 U.S. 471 (1963), and because the waiver of his *Miranda* rights was not knowing and voluntary.

### A.    Probable Cause for Traffic Stop

A traffic stop is justified when officers have probable cause to believe that the driver has committed a traffic violation.  *Whren v. United States*, 517 U.S. 806, 810 (1996).  Patrolman Barhorst testified that he personally observed the Civic change lanes to exit the interstate without using a turn signal, a violation of Ohio Revised Code § 4511.39(A).  The Court finds that Barhorst had probable cause to initiate the traffic stop, and that the traffic stop did not violate Defendant's Fourth Amendment rights.  Defendant does not argue to the contrary.

### B.    Probable Cause to Further Detain Occupants and Search Vehicle

Defendant argues, however, that, even if the initial traffic stop is lawful, the officer cannot "further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention."  *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008) (internal quotation omitted).  *See also Rodriguez v. United States*,

5

575 U.S. 348, 354-55 (2015) (holding that a traffic stop may last no longer than is necessary to effectuate its purpose, unless the officer has "reasonable suspicion ordinarily [required] to justify detaining an individual").

Defendant contends that Patrolman Barhorst had no legal basis to further detain him or Grooms to conduct a drug investigation or search the vehicle. The Court disagrees. When Barhorst first approached the car, he noticed that Groom was very nervous. Barhorst, who was familiar with the smell of marijuana, immediately smelled marijuana in the car and observed a small plastic baggie similar to those associated with narcotics sales and use. Moreover, Groom admitted that the baggie had contained marijuana. These facts gave Barhorst probable cause to believe that the vehicle contained contraband and justified a warrantless search of the vehicle. *See, e.g., United States v Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) (holding that the smell of marijuana may supply probable cause for the issuance of a warrant).

Moreover, based on the information received from the reliable confidential informant who set up the controlled buy, and the events that unfolded prior to the traffic stop, and during the first minutes of that traffic stop, the Court finds that the law enforcement officers had probable case to believe that Marco Villa was involved in drug trafficking and that contraband would be found inside the vehicle.

Officers learned from a reliable confidential informant that Villa had a large quantity of fentanyl. On the date of the controlled buy, they observed Villa place a box in the trunk of the Honda Civic. He and Groom then traveled to meet briefly

6

with the individuals in the white Mitsubishi, who, according to Timothy Wallace, likely planned to act as security detail for the drug transaction. Officers then observed the two cars proceed toward the casino where the controlled buy was to take place, and Villa told the confidential informant to expect them in approximately nine minutes. Further reasonable suspicion was aroused after Patrolman Barhorst initiated the traffic stop, when Groom and Villa both appeared very nervous and gave conflicting statements about Villa's identity and the nature of their relationship.

Based on the foregoing, the Court finds that the events that transpired during the course of the traffic stop gave the officers the reasonable suspicion they needed to further detain Villa and Groom. Likewise, the Court finds that, because the officers had probable cause to believe that the vehicle contained evidence of contraband, they did not improperly extend the length of the traffic stop to search the car. The warrantless search of the Civic falls under the automobile exception to the warrant requirement. *See Hernandez v. Boles*, 949 F.3d 251, 259 (6th Cir. 2020) ("It is blackletter law that the police can lawfully search a car without a warrant if they have probable cause.").

### C. Knowing and Voluntary Waiver of *Miranda* Rights

Finally, Defendant urges the Court to suppress the statement that he made to Agent Miller, claiming full responsibility for the fentanyl found in the trunk of the vehicle. He first argues that, because the search and seizure were unlawful, this statement should be suppressed as "fruit of the poisonous tree." *Wong Sun v.*

*United States*, 371 U.S. 471 (1963). Given that the Court has found that the search and seizure were not unreasonable, the Court rejects this argument.

Defendant also argues that the statement should be suppressed because it was not the product of a knowing or voluntary waiver of his *Miranda* rights. The Government bears the burden of proving, by a preponderance of the evidence, that the waiver was knowing and voluntary. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Although Defendant argues that the waiver was coercively obtained, the evidence proves otherwise. Patrolman Barhorst read Defendant his *Miranda* rights prior to questioning him. Doc. #32, PageID#148. Agent Miller verified this fact with Barhorst before he began questioning Defendant. Defendant then admitted to Miller that the box of fentanyl belonged to him and that Groom had nothing to do with it. *Id.* at PageID#172.

Miller was dressed in plain clothes, did not display his firearm, and made no threats or promises prior to the time Defendant made his statement. He testified that he spoke to Defendant for about five minutes and that Defendant was "very polite, very forthcoming." *Id.* at PageID#173. Based on the evidence presented at the hearing, the Court concludes that the Government has proved, by a preponderance of the evidence, that Defendant knowingly and voluntarily waived his *Miranda* rights. Accordingly, there is no legal basis to suppress his statement claiming ownership of the fentanyl.

8

## III. Conclusion

For the reasons set forth above, the Court OVERRULES Defendant's Motion

to Suppress, Doc. #29, in its entirety.

Date: March 31, 2020

/s/ Walter H. Rice (by tp with permission of Judge Rice)

WALTER H. RICE
UNITED STATES DISTRICT JUDGE